Troy HILL and Stephen Woolbright,
et al., Plaintiffs,

v.

CITY OF GREENVILLE,
TEXAS, Defendant.

No. CA–3–87–0084–T.

United States District Court,
N.D. Texas,
Dallas Division.

June 10, 1988.

Thomas A. Woodley, Gregory K. McGillivary, Mulholland & Hickey, Washington, D.C., B. Craig Deats, Fickman, Van Os, Waterman, Dean & Moore, P.C., Austin, Tex., for plaintiffs.

Mick McKamie, City Atty., Greenville, Tex., Betty S. Kitch, Haynes & Boone, Fort Worth, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

MALONEY, District Judge.

On October 30, 1987, Defendant filed its Motion for Summary Judgment. On December 22, 1987, Plaintiffs filed their Amended Motion for Summary Judgment, and Defendant filed its Motion for Summary Judgment on its Counterclaim.

### Background

On April 15, 1985, the Supreme Court issued its final decision in *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). In short, that case held that Congress could enforce the provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219, against the states and local governments. The significant effect of that holding with regard to this case is that state and local governments had to begin paying their employees overtime in accordance with § 7 of the FLSA.

In late August, 1985, Defendant implemented changes in the compensation structure for its firefighter employees. The firefighters in the City of Greenville were salaried employees who were regularly required to work overtime. Defendant recalculated the firefighters' compensation on an hourly basis and then reduced their hourly rate of pay. After the reduction in hourly pay, when the City paid the firefighters overtime, the firefighters received the same amount of compensation (with payment of overtime) as they had received before the reduction in pay (when no overtime had been paid).

On November 14, 1985, Congress enacted an amendment to the FLSA. That amendment, among other things, delayed the application of the FLSA overtime provisions until April 15, 1986. By the terms of the amendment, no state or local government would be liable to its employees for nonpayment of overtime until April 15, 1986.[1] That amendment, however, also contained an anti-discrimination section which proscribed discrimination by state and local governments against any of their employees who assert coverage under the FLSA after February 19, 1985. The application of that section, section 8, is in dispute here.

### Discussion

Plaintiffs contend that Defendant's reduction of their hourly rate of pay in order to nullify the effect of overtime payments, violates the anti-discrimination provision of section 8 to the 1985 amendment to the FLSA. That section provides:

A public agency which is a State, political subdivision of a State, or an interstate governmental agency and which discriminates or has discriminated against an employee with respect to the employee's wages or other terms or conditions of employment because on or after February 19, 1985, the employee asserted coverage under section 7 of the Fair labor Standards Act of 1938 shall be held to have violated section 15(c)(3) of such Act....

Pub.L. No. 99–150, § 8, 99 Stat. 791 (November 14, 1985). Plaintiffs assert, and Defendants appear to agree, that in order to show that Defendant violated this section, Plaintiffs must show that: 1) there was an assertion of coverage under the FLSA, and 2) Defendant discriminated against Plaintiffs.

### Applicability of Section 8

Defendant's first argument is that section 8 is inapplicable to Defendant's actions because section 8 was enacted after Defendant took the actions in question.[2] Defendant reasons that because section 8 did not exist at the time of Defendant's purportedly discriminatory actions, Defendant could not have violated section 8. Plaintiffs respond that section 8 should be ap-

---

1. February 19, 1985, was the actual date of the *Garcia* decision. The Supreme Court denied rehearing on April 15, 1985.

2. Defendant reduced Plaintiffs' hourly rate of pay effective August 31, 1985. The amendment to the FLSA, containing § 8, was enacted on November 14, 1985.

plied retroactively, making discriminatory actions between February 19, 1985, and November 14, 1985, violations of section 8.

■ The parties to this litigation call upon the Court to determine whether section 8 is applicable to actions occurring before the 1985 amendment was enacted. Both parties have submitted excerpts from committee reports and committee hearings in order to persuade the Court of the legislative intent behind section 8. The Court is of the opinion that the excerpts submitted are inconclusive and occasionally contradictory, and are of little aid in determining the applicability date of section 8. Therefore, absent a clear Congressional intent otherwise, this Court will decline to apply retroactively a statute imposing liability. *See United States v. Security Industrial Bank*, 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed. 2d 235 (1982).

■ Declining to apply section 8 retroactively, however, does not automatically relieve Defendant from all liability. Defendant could be liable after November, 1985, for its actions occurring in August, 1985, if those actions in fact violated section 8 and if they remained uncorrected after November, 1985. In other words, if Defendant's actions were discriminatory within the meaning of section 8 when they occurred in August, 1985, and the discriminatory action was not corrected when the November, 1985, amendment was enacted, Defendant would be liable for violation of section 8 after the November, 1985, amendment was enacted, even though no new and independent discriminatory action occurred. This is so because an act of discrimination which occurred before November, 1985, and which remains uncorrected, is a continual act of discrimination. The Court must therefore determine if the action of which Plaintiffs complain, violates section 8.

As stated above, the parties appear to agree that for Plaintiffs to show that Defendant violated section 8, Plaintiffs must show that: 1) there was an assertion of coverage under the FLSA, and 2) Defendant discriminated against Plaintiffs.

## Assertion of Coverage

■ Section 8 of the 1985 amendment states that no public agency shall discriminate against an employee because the employee "asserted coverage" under the FLSA. The parties interpret this to mean that Plaintiffs must have taken some action sufficient to find that Plaintiffs made known to Defendant that they believed they were covered by the FLSA. The parties disagree, however, about what type of action is sufficient for that purpose.

Defendants put forth several reasons that Plaintiffs' actions have failed to meet this condition precedent. First, each and every Plaintiff did not take action to assert coverage under FLSA; only a few Plaintiffs purport to have asserted coverage. Second, if in fact those Plaintiffs took action to assert coverage under the FLSA, their actions only served to assert coverage for themselves, and not for Plaintiffs as a group. Third, those Plaintiffs who purport to have asserted coverage did not do so until sometime in 1986, long after Defendant had implemented the wage reduction.

The Court finds *Blanton v. City of Murfreesboro*, 658 F.Supp. 1540 (M.D.Tenn. 1987), helpful in the interpretation of the "assertion of coverage" provision of section 8. The court in that case stated: "[T]he legislative history indicates that the drafters intended that an 'assertion of coverage' need be only 'some act constituting notification to an employer' that employees are covered by the overtime provisions of the FLSA." *Blanton*, at 1544.

In the case at hand, the employer (Defendant) already had notice that the employees were covered by the overtime provisions of the FLSA. Defendant's Statement of Undisputed Facts and Issues of Law, filed October 30, 1987, is replete with admissions that Defendant was aware of the *Garcia* decision and that the FLSA was applicable to Defendant. To require Plaintiffs to take some formal action to notify Defendant that they are covered by the FLSA would be superfluous. Because the purpose of the "assertion of coverage" provision is to put an employer on notice that its employees are covered by the FLSA, if

the employer clearly already has notice of that fact, the employer needs no further notice.

Therefore, the Court concludes that because the purpose of the "assertion of coverage" requirement of section 8 was fulfilled by Defendant having notice, that requirement was satisfied without further action by Plaintiffs.

### Discrimination

■ To violate section 8, Defendant also must have discriminated against Plaintiffs. After having notice that Plaintiffs were covered by the FLSA, Defendant unilaterally reduced Plaintiffs' hourly rate of pay in order to nullify the effect of overtime payments. Defendant argues, however, that its unilateral reduction in hourly wages was not an act of discrimination. Defendant reasons: first, Plaintiffs were not under written contracts of employment and therefore Defendant was free to adjust the terms of Plaintiffs' employment at any time; second, the unilateral wage reduction was not in retaliation to Plaintiffs' assertion of coverage; and third, Defendant had a legitimate, non-discriminatory reason for reducing Plaintiffs' hourly rate of pay.

The court in *Blanton* addressed some of these issues. That court concluded that the issue of whether the city's motive or intent was in fact retaliatory was not material to the resolution of the case. It is the unilateral reduction of regular pay, which was intended to nullify the legislative application of overtime compensation, which section 8 prohibits. *Blanton,* at 1544. This conclusion applies equally to Defendant's claim that it could reduce Plaintiffs' wages at any time because Plaintiffs were not under a contract of employment. The fact is that section 8 prohibits Defendant from reducing Plaintiffs' wages if the reduction is in response to application of the overtime provision of the FLSA.

Defendant also argues that it had a legitimate, non-discriminatory reason for reducing Plaintiffs' rate of pay: Defendant was in the midst of a budgetary crisis at the time *Garcia* was decided and the FLSA became applicable to states and local governments. Defendant was therefore forced to reduce Plaintiffs' hourly rate of pay in order to comply with the overtime provisions of the FLSA and still remain within its budget for that fiscal year. The Court does not find that argument to be compelling, especially in light of the fact that Congress delayed application of the FLSA overtime provision in order to give the states and local governments time to rearrange their budgetary priorities to comply with the FLSA. *See Rhinebarger v. Orr,* 839 F.2d 387 (7th Cir.1988).

This Court therefore concludes, as a matter of law, that Defendant's action in August, 1985, of unilaterally reducing Plaintiffs' hourly rate of pay was "discriminatory" within the meaning of section 8. If Defendant did not take action to restore Plaintiffs' hourly rate of pay after the November, 1985, amendment was enacted, then Defendant is liable for violating section 8 from November, 1985, until such time as Defendant does take corrective action.

Plaintiff's complaint alleges that the ordinance which reduced the hourly rate of pay for Plaintiffs has remained in force and effect at all times since August 31, 1985. Nowhere does Defendant deny that allegation and the Court therefore takes it as true. Therefore, Defendant has been in violation of section 8 since November 14, 1985, and is still in violation of that provision.

Implicit in this holding is the conclusion that Defendant has not paid Plaintiffs overtime in accordance with section 7 of the FLSA since April 15, 1986. The amount of compensation which Defendant has paid to Plaintiffs since April 15, 1986, represents Plaintiffs' regular rate of pay. Therefore, the "overtime" which Defendant has paid based on the reduced hourly rate is not "overtime" within the meaning of section 7 of the FLSA and Defendant is therefore liable for the payment of overtime from April 15, 1986.

### Standing of Certain Plaintiffs

■ Defendant next asserts that Plaintiffs who were either in training or not employed by Defendant at the time the pay

decrease was implemented have not been harmed, and therefore have no cause of action and should be dismissed. This Court disagrees. By not raising the hourly pay to its prior level after November 14, 1985, Defendant has discriminated against those employees also. Therefore, it is the holding of this Court that Plaintiffs who were in training or not employed by Defendant at the time the pay decrease was implemented have been harmed because Defendant's discrimination continued after the date on which those Plaintiffs became full-time employees.

### Exempt Plaintiffs

■ Defendant also asserts that the fire captains should be dismissed because they are in executive or managerial positions and therefore are exempt employees under the FLSA. Defendant contends that to be exempt, the fire captains only need to: 1) have primarily supervisory duties; 2) supervise two or more employees; and 3) earn more than $250.00 per week. What Defendant fails to mention, however, is that exempt employees must earn a *salary* of more than $250.00 per week, and Defendant has the burden of proving that an employee meets this requirement. *Knecht v. The City of Redwood City*, 683 F.Supp. 1307 (N.D.Cal.1987).

The Court concludes that Defendant has not proven that Plaintiff fire captains are exempt from coverage under the FLSA and therefore those Plaintiffs should not be dismissed.

Thus far, the Court has concluded that section 8 of the 1985 amendment to the FLSA is not retroactive, Defendant has been in violation of section 8 since November 14, 1985, no Plaintiffs are exempt or should be dismissed, and that Defendant has not paid overtime as required by the FLSA since April 15, 1986. The Court is therefore of the opinion that Plaintiffs' motion for summary judgment should be granted and Defendant's motion for summary judgment should be denied.

### Damages

Because the Court grants Plaintiffs' motion for summary judgment, the issue of damages must be addressed. The Court notes that the parties did not address damages in their motions or briefing.

Section 8 of the 1985 amendment states that any public agency which is a State or political subdivision of a State and which takes the actions prohibited in section 8 shall be held to have violated section 15(a)(3) of the FLSA. The remedies for violating section 15(a)(3) are found in section 16(b) of the FLSA. That section provides, in pertinent part, that any employer which violates the provisions of section 15(a)(3) of the FLSA "shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of [section 15(a)(3)] of [the FLSA], including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.... The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C.A. § 216(b) (West Supp.1988).

Although the Court cannot make a determination of damages because the parties have not addressed this issue in their motions, the Court can determine the period in which damages occurred. The Court has already determined that Defendant was in violation of section 8 on November 14, 1985, when the 1985 amendment was enacted and Defendant did not restore Plaintiffs' hourly rate of pay to its previous level. Defendant's violation of section 8 continues until it takes measures to restore Plaintiffs' hourly rate of pay to its previous level. No evidence has been presented to show that Defendant has in fact taken such action, and the Court finds that no action has been taken.

However, the Court finds that Plaintiffs have suffered no damages for the period between November 14, 1985, and April 15, 1986. This is because although Defendant had reduced Plaintiffs' hourly rate of pay, the sum total paid to Plaintiffs during that period equalled Plaintiffs' previous rate of pay. Another section of the 1985 amendment relieved Defendant of liability for

non-payment of overtime between November 14, 1985 and April 15, 1986. Therefore, Plaintiffs received exactly what they were entitled to during that time period: compensation equal to the amount which they received before the 1985 amendment and before the *Garcia* decision.

Accordingly, the Court finds that Plaintiffs' damages, began to accrue on April 15, 1986, when Defendant did not restore Plaintiffs' hourly rate to its previous level and did not pay them overtime based on that rate of pay.

Because the Court has no information from which it can determine the amount of Plaintiffs' damages, the Court will issue a separate order setting the amount of Plaintiffs' damages for hearing.

### Defendant's Motion for Summary Judgment on its Counterclaim

Defendant's counterclaim seeks the return of "extra compensation" it has paid Plaintiffs in the form of premium overtime. Because this Court has ruled that Defendant has in fact not paid Plaintiffs any overtime in accordance with the FLSA, this Court finds that Defendant's motion for summary judgment on its counterclaim is moot.

### Conclusion

Because this Court has found that Defendant is in violation of section 8 of the 1985 amendment to the FLSA and has not paid Plaintiffs overtime pursuant to section 7 of the FLSA:

It is therefore ORDERED that Plaintiffs' motion for summary judgment on its claims against Defendant is granted;

It is further ORDERED that Defendant's motion for summary judgment on Plaintiffs' claims against Defendant is denied.