Robert R. **YORK, et al., Plaintiffs,**

v.

**CITY OF WICHITA FALLS, TEXAS, Defendant.**

Civ. A. No. CA–7–87–0020.

United States District Court,
N.D. Texas,
Wichita Falls Division.

Aug. 31, 1990.

---

Thomas A. Woodley, Mulholland & Hickey, Washington, D.C., Michael F. Payne, Wichita Falls, Tex., for plaintiffs.

Greg Humbach, City Atty., Wichita Falls, Tex., Bettye S. Springer, Haynes & Boone, Ft. Worth, Tex., B. Jean Thompson, Asst. City Atty., Wichita Falls, Tex., for defendant.

## MEMORANDUM OPINION
## AND ORDER

MARY LOU ROBINSON, District Judge.

Before the Court are Plaintiffs' and Defendant's Motions for Summary Judgment on the issue of damages. Both Motions are granted in part and denied in part.

Plaintiffs are firefighters employed by the City of Wichita Falls, Texas, in several official capacities. In June of 1985 the City unilaterally reduced their wages to bring its overtime compensation payment into what it hoped would be compliance with the Fair Labor Standards Act (FLSA or Act), in light of the Supreme Court's decision in *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), decided February 19, 1985. The City reduced the hourly wages of the firefighters and began paying overtime. The firefighters received the same annual pay they had received before their wages were reduced, the only difference being that after the reduction their payroll records reflected that they received overtime wages.[1]

This Court has held that Plaintiffs' wages were reduced in response to *Garcia*'s application of the FLSA to the City, and that this reduction violated Section 8 of this Act. The Court further concluded that as to the Plaintiff Fire Captains and Battalion Chiefs the City did not carry its burden of showing that every requirement for executive exemption from the Act was met, thus they were covered under the FLSA's overtime provisions. As to the Plaintiff Fire Chief, the Court found that it was shown that this office met the requirements for exemption from the Act.

## SUMMARY JUDGEMENT STANDARDS

"The Court may terminate litigation by rendering a summary judgement where no genuine issue of material fact exists and the moving party is entitled to judgement as a matter of law." *Honore v. Douglas,* 833 F.2d 565, 567 (5th Cir.1987) (citations omitted). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273–74 (1986); Fed.R. Civ.Pro. 56(c). A material fact issue is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A material fact is one that is dispositive, or that has some legal significance. *Thatcher v. Brennan,* 657 F.Supp. 6, 7 n. 1 (S.D. Miss.1986), *aff'd,* 816 F.2d 675 (5th Cir. 1987). The substantive law will identify which facts are material. *Anderson, supra,* 477 U.S. at 249, 106 S.Ct. at 2510, 91 L.Ed.2d at 212.

"Plaintiffs must allege specific facts with sufficient particularity to meet all the elements necessary to lay a foundation for recovery, including those necessary to negate the defense" offered by a Defendant. *See Brown v. Texas A & M University,* 804 F.2d 327, 333 (5th Cir.1986). Once the party seeking summary judgement "makes the initial showing, negating any disputed, material fact, the party opposed to the motion must offer evidence reflecting the existence of one or more genuine issues of material fact." *Honore v. Douglas, supra,* 833 F.2d at 567 (citations omitted). *Accord Celotex Corp., supra,* 477 U.S. at 322–23, 106 S.Ct. at 2552, 91 L.Ed.2d at 273–74.

"The bare allegations of the pleadings will not suffice" to show the existence of a genuine issue of material fact. *Honore v. Douglas, supra,* 833 F.2d at 567. *Accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Celotex Corp., supra,* 477 U.S. at 323–25, 106 S.Ct. at 2553, 91 L.Ed.2d at 273–75. "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgement; the requirement is that there be no *genuine* issue of *material* fact." *Liberty Lobby, Inc., supra,* 477 U.S. at 247–48, 106 S.Ct. at 2510, 91 L.Ed.2d at 210–11 (emphasis in original). Thus, the nonmoving party

---

1. Further discussion of the background of this action may be found in this Court's opinion and findings concerning the parties' cross-motions for summary judgment on the issue of liability. *See York v. City of Wichita Falls,* 727 F.Supp. 1076 (N.D.Tex.1989).

must designate specific facts showing there is a genuine issue of material fact for trial. *Id.; Celotex Corp., supra,* 477 U.S. at 322–23, 106 S.Ct. at 2553, 91 L.Ed.2d at 273–74; Fed.R.Civ.Pro. 56(e).

"Summary judgement disposition is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions." *Honore v. Douglas, supra,* 833 F.2d at 567. This Court must resolve "all factual uncertainties and mak[e] all reasonable inferences in favor of the nonmoving party." *See id.*

However, "[t]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Liberty Lobby, supra,* 477 U.S. at 249, 106 S.Ct. at 2511, 91 L.Ed.2d at 212 (citations omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (citations omitted). *See generally,* S. Fitzwater, S. Johnson & T. Henry, *Recent Summary Judgement Jurisprudence for the Fifth Circuit Practitioner* 5 Fifth Cir.Rep. 767 (1988).

### SUMMARY OF THE POSITION OF THE PARTIES

The parties have stipulated to three amounts as actual damages that may be due Plaintiffs in this action, depending on the decision by the Court concerning the appropriate measure of damages. The first figure is determined by including the Plaintiffs' accruing vacation, holiday and sick leave times into the calculation of "hours worked," thus including these times into any award of damages as overtime wages due. The second figure excludes these three categories of time from any damage award, while the third figure does not include these times as payable overtime hours unless these unscheduled hours were actually worked by a Plaintiff. *See* filed Stipulations of Fact.

Defendant asserts in its motion that the amount of damages should not be determined by including any of the Plaintiffs' vacation, holiday and sick leave hours into the calculation of "hours worked" for awarding of damages. The Plaintiffs respond by stating that the City's prior policy was to include such hours into the calculation of amounts due them for overtime hours worked, and that this policy should not now be altered to allow the City what Plaintiffs assert is in effect an offset of damages for hours not actually worked by Plaintiffs. They state that such a result would violate the remedial policies of the FLSA and is unfair to them now that the City's liability has been judicially determined.

Plaintiffs also assert that liquidated damages are either mandatory or, under the facts of this action, should be assessed pursuant to 29 U.S.C. § 260 against the City for its violation of the FLSA. In the alternative, Plaintiffs seek pre-judgment interest and attorney's fees.[2] Defendants respond by stating that liquidated damages are not mandatory under this section and that they acted in good faith reliance on their understanding of the legality of their actions—an understanding arrived at after reasonable steps were taken by them to assure compliance with the changes in the FLSA due to *Garcia.*

The City also points out that liquidated damages are discretionary under section 216 of the Act, the section it believes is the applicable section for liquidated damages, and asserts the proper inquiry is therefore not the "good faith" and reasonable belief test under section 260. For these reasons, and because liquidated damages are not necessary to effectuate the relevant purposes of the FLSA, the City states a liquidated damages award would not be proper. It also disputes the propriety of any award of pre-judgment interest.

The issue of reasonable attorney's fees in this action is not ripe for decision. It will be addressed by further order of the Court, if necessary.

### DISCUSSION

#### A. *Appropriateness of Liquidated Damages*

Section 8 of the 1985 amendment to the FLSA states that public agencies found to

---

**2.** Plaintiffs who prevail on their FLSA claims are entitled to recover reasonable attorney's fees pursuant to 29 U.S.C. § 216(b). *Diaz v. Robert Ruiz, Inc.,* 808 F.2d 427, 429 (5th Cir.1987).

have violated this section will be held to have violated section 15(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3).[3] Section 216(b) of the FLSA establishes standards for the imposition of liquidated damages when a party has contravened section 15(a)(3) of the Act. This section provides in pertinent part that

> Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation ... the payment of wages lost and an additional equal amount as liquidated damages.

29 U.S.C. § 216(b) (1990 Supp.) (effective 1977). Plaintiffs assert that this language makes "an additional equal amount as liquidated damages" mandatory, however, the plain language of this subsection as a whole makes it clear that liquidated damages are mandatory only for violation of sections 206 or 207 of the FLSA. The "as may be appropriate" portion of this subsection clearly means that liquidated damages are not mandatory for section 215(a)(3) violations. This raises the issue of appropriate standards for allowance of liquidated damages under the Act.

Plaintiff states the standard involves a determination of the City's "good faith" in taking its actions. Good faith arises out of the language of 29 U.S.C. § 260, the other FLSA section discussing liquidated damages, which states

> In any action commenced ... to recover unpaid ... overtime compensation, or liquidated damages, under the [FLSA], ... if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, at its sound discretion, award no liquidated damages or award any amount

thereof not to exceed the amount specified in section 216.

This section was enacted subsequent to section 216; "[t]he purpose of this amendment to the [FLSA] was to mitigate the harshness of the then-strict liability offense of violating Section 216, with its attendant double-damage assessment." *LeCompte v. Chrysler Credit Corp.,* 780 F.2d 1260, 1263 (5th Cir.1986). Section 260 therefore modifies section 216(b)'s "mandatory" double-damages assessment by providing employers with a two element defense (good faith and reasonableness), and the two statutes must be read together. *See Marshall v. Brunner,* 668 F.2d 748, 753 (3d Cir.1982).

■ Thus, where an employer seeks to avoid liquidated damages the courts will consider whether it has proven that it acted in good faith and if it had reasonable grounds to believe its act or omission was not a violation of the FLSA. *Id.* *See also Reeves v. International Tel. & Tel. Co.,* 616 F.2d 1342, 1352–53 (5th Cir.1980), *cert. denied,* 449 U.S. 1077, 101 S.Ct. 857, 66 L.Ed.2d 800 (1981) (discussing good faith in context of a § 215(a)(3) violation); *Barcellona v. Tiffany English Pub, Inc.,* 597 F.2d 464, 468 (5th Cir.1979) (discussing good faith in context of a § 206 or 207 violation). The employer has the burden of demonstrating both elements. *Doty v. Elias,* 733 F.2d 720, 725–26 (10th Cir.1984); *Reeves, supra,* 616 F.2d at 1352; *Barcellona, supra,* 597 F.2d at 468.

The reasonable grounds element requires that the employer's belief that the offending act complied with FLSA requirements be objectively reasonable. *Brock v. Claridge Hotel and Casino,* 846 F.2d 180, 187 (3d Cir.), *cert. denied,* 488 U.S. 925, 109 S.Ct. 307, 102 L.Ed.2d 326 (1988); *Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 464 (D.C.Cir.1976), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978). The issue of a defendant's "good faith" is a

---

**3.** Section 8 was enacted in November of 1985; it was effective on April 15, 1986. Section 215(a)(3) states:

> [After the effective date of this section], it shall be unlawful for any person ... to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding....

29 U.S.C. § 215(a)(3).

subjective determination. *Marshall v. Brunner, supra,* 668 F.2d at 753.

Employers do not satisfy this burden by pleading ignorance, *LeCompte, supra,* 780 F.2d at 1262; *Barcellona, supra,* 597 F.2d at 468–69, because good faith includes a duty to investigate potential liability under the FLSA. *Barcellona, supra,* 597 F.2d at 469. A reasonable belief may be found where the employer purposefully "engaged in the acts proven to be violations but did so under a mistaken belief, although reasonable, that its acts were in conformity with the law." *Martinez v. Food City, Inc.,* 658 F.2d 369, 376 (5th Cir.1981) (citing *Reed v. Murphy,* 232 F.2d 668, 678 (5th Cir.), *cert. denied,* 352 U.S. 831, 77 S.Ct. 45, 1 L.Ed.2d 51 (1956)).

Finally, "even if the employer does introduce evidence supporting a 'good faith and reasonable belief' defense, the trial court may still, in its discretion, award liquidated damages." *Peters v. City of Shreveport,* 818 F.2d 1148, 1167 (5th Cir.1987), *cert. dismissed,* 485 U.S. 930, 108 S.Ct. 1101, 99 L.Ed.2d 264 (1988) (citing *Martinez v. Food City, Inc., supra,* 658 F.2d at 376). This is not to say that reasonableness and good faith is the only test for liquidated damages under the FLSA.

■ As Defendant points out, other courts have discussed whether liquidated damages under section 216(b) are "appropriate to effectuate the purposes of section 215(a)(3)" of the Act. *See Blanton v. City of Murfreesboro,* 856 F.2d 731, 737 (6th Cir.1988) (comparing §§ 8, 206 & 207 violations with § 215(a)(3)'s purpose and with § 216(b)); 29 U.S.C. § 216(b). Since this is not a retaliatory discharge action this Court need not decide the issue of which of these two standards applies, if indeed they are different in application. The Court finds that liquidated damages are warranted under the facts of this action.[4]

In this case, the Defendant has presented some evidence that it subjectively intended to fully comply in good faith with the FLSA and took objectively reasonable steps to assure such compliance. For example, Ms. Stricklin, the Personnel Director for the City, stated that beginning in May of 1985, she and several other city officials attended two seminars in which changes in the FLSA due to *Garcia* were discussed. *See* Oral Deposition of Jan Stricklin, pp. 18–26 (Defendant's Exhibit "E").

While Ms. Stricklin stated she did not believe everything she was told at these seminars, *see id.,* the City alleges that representatives of the Department of Labor's Wage and Hour Division repeatedly stated to her and other City personnel that an employer could reduce its firefighters' hourly wages, pay them overtime pursuant to *Garcia's* interpretation of the FLSA's overtime wage requirements, and not be in violation of the Act.[5] Thus the City argues that a reasonable belief may be found because it purposefully "engaged in acts proven to be violations but did so under a mistaken belief that its acts were in con-

---

**4.** The City has presented evidence, *see* Defendant's Exhibits "A" through "F", that while its actions were caused by financial problems, it intended to act in good faith, evidenced in part by the fact that it did not "discharge or in any other manner discriminate against any employee because such employee ha[d] filed any complaint or instituted or caused to be instituted any proceeding under or related to" the FLSA, which it knew would be in violation of 29 U.S.C. § 215(a)(3). The purpose of section 215(a)(3)'s prohibition of discrimination is to remove the risk of employer retaliation against those employees who attempt to secure their just wages under the Act. *Dunlop v. Carriage Carpet Co.,* 548 F.2d 139, 145–46 (6th Cir.1977) (citing *Mitchell v. DeMario Jewelry,* 361 U.S. 288, 292, 80 S.Ct. 332, 335, 4 L.Ed.2d 323 (1960)).

As Defendant points out and Plaintiffs concede, there is an absence of evidence of retalia-

tion by the City against Plaintiffs for their assertion of FLSA coverage. However, reliance on this lack of retaliatory evidence is misplaced because this is not a retaliatory discharge action brought under § 215(a)(3).

**5.** These meetings were held in May and June of 1985. At least one meeting attended by City officials featured speakers from the Regional and Area Directors for the Wage and Hour Division of the United States Department of Labor.

It is undisputed that when the City took the actions which were in violation of section 8 of the 1985 amendment to the Act, section 8 had not been enacted. The City could not have known that its acts would violated this section until after it was enacted in November of 1985.

formity with the law." *Martinez v. Food City, Inc., supra,* 658 F.2d at 376.

The Court notes that even as late of October 28, 1985, the U.S. Dept. of Labor was of the opinion that a systematic rate reduction in the wages of all employees would not, in and of itself, involve the application of Section 8 or be held to constitute a violation of section 215(a)(3) of the Act. *See* Defendant's Exhibit "G" (Rep. Jeffords, Remarks in Support of H.R. 3530 (introducing Letter from Solicitor of Labor, October 28, 1985), ___ Cong. Rec. H 9241 (1985)). The City cannot be unduly faulted for acting in June of 1985 on similar opinions expressed by other Department of Labor officials.

However, good faith includes a duty to investigate potential liability under the FLSA. *Barcellona, supra,* 597 F.2d at 469. The record is clear that the City made no effort to do so after the 1985 amendments to the FLSA were enacted. Therefore the City cannot reasonably claim it acted or continued to act in good faith after November of 1985.

Furthermore, the City cannot claim "reasonable grounds" because this element requires that the employer's belief that the offending act complied with FLSA requirements be objectively reasonable. *Claridge Hotel and Casino, supra,* 846 F.2d at 187; *Laffey, supra,* 567 F.2d at 464. Objective reasonableness requires the City to take such tangible or visual acts as are fit and appropriate under the circumstances. It is undisputed that the City did not take any such acts after the 1985 amendments were enacted.

Thus while the City states that the Dept. of Labor did not change its position regarding section 8 until late 1986, a fact Plaintiffs do not dispute, this does not prove objective reasonableness. The City points to no evidence showing how it was aware of the Dept.'s official position after June of 1985; it points to no evidence that it sought to determine the Dept.'s position after the November, 1985, amendments. In fact it concedes that it "did not correspond in writing directly with the Department of Labor regarding the conduct it took." Defendant's Response to Plaintiffs' Motion for Summary Judgment at p. 11. The Court finds that the City failed to take objectively reasonable steps to meet its duty to investigate potential liability under the 1985 amendments to the Act.

The City has presented evidence that its original conduct in June of 1985—adjusting the base wage rate of the Plaintiffs—resulted from statements made by Dept. of Labor officials, as well as expected revenue shortfalls faced by the City during relevant budget years.[6] In this connection, the Court notes that there was "no clear legal precedent which would have advised the City that its conduct was manifestly condemned under the law" at the time its actions were taken. *Bond v. City of Jackson,* 727 F.Supp. 1516, 1519 (S.D.Miss. 1989). However, this does not excuse the City from seeking advice regarding its conduct subsequent to the November, 1985, amendments of the FLSA. Nor does it excuse the City from presenting evidence that it did so.

The Court finds that the City has not shown that it acted in good faith and on reasonable grounds to believe its acts were not a violation of section 8 of the FLSA. The Court further finds that liquidated damages are appropriate and necessary to effectuate the purposes of the Act under the facts of this action. Therefore Plaintiffs' Motion is granted insofar as it seeks an award of liquidated damages. The amount of such damages is addressed next.

B. *Amount of Liquidated Damages*

An award of liquidated damages is compensatory, not punitive or penal in nature. *See, e.g., Brooklyn Saving Bank v. O'Neil,* 324 U.S. 697, 707, 65 S.Ct. 895, 902, 89 L.Ed. 1296 (1945); *Overnight Motor Transp. Co. v. Missel,* 316 U.S. 572, 583–84,

---

6. In the City's 1983–84 budget, it had a revenue shortfall of approximately $600,000.00 and had been required to lay off some 30 jobs throughout this budget year. In its 1984–85 fiscal year, the City utilized a new accounting procedure to deal with its financial difficulties. However, in 1985 the City learned it would be losing at least $1.3 million in federal revenue sharing funds. During the 1985–86 budget year, the City operated with a deficit budget.

62 S.Ct. 1216, 1223, 86 L.Ed. 1682 (1942); *Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1064 (2d Cir.1988); *Heiar v. Crawford County, Wis.,* 746 F.2d 1190, 1202 (7th Cir.1984), *cert. denied,* 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985). "Congress provided for liquidated damages to compensate employees for losses they might suffer by reason of not receiving their lawful wage at the time it was due." *Marshall v. Brunner,* 668 F.2d 748, 753 (3d Cir.1982). Liquidated "damages constitute compensation for the retention of a workman's pay where the required wages are not paid 'on time.'" 29 C.F.R. § 790.22(a) n. 137.

Congress has authorized courts to award up to the full sum of liquidated damages notwithstanding an employer's demonstration of good faith and objective reasonableness. 29 U.S.C. § 260. Even in those situations where "'the liquidated damages provision acts harshly upon employers whose violations are not deliberate but arise from uncertainties or mistakes as to coverage' ... the compensatory good of the provision [is] sufficient to override that harshness." *Laffey v. Northwest Airlines,* 582 F.Supp. 280, 283 (D.D.C.1982), *aff'd in relevant part,* 740 F.2d 1071 (D.C.Cir.1984) *cert. denied,* 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 951 (1985) (citing *D.A. Schulte, Inc. v. Gangi,* 328 U.S. 108, 115, 66 S.Ct. 925, 928, 90 L.Ed. 1114 (1946)).

"Atop all else, the ... [FLSA] undoubtedly [is a] remedial statute, as such to be liberally construed in favor of their intended beneficiaries." *Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 461 (D.C.Cir. 1976), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978). "The predicate for the ... imposition [of liquidated damages] is the reality that '[t]he retention of a workman's pay may well result in damages too obscure and difficult of proof for esti-

mate other than by liquidated damages.'" *Id.* at 463 (citing *Overnight Motor Transp. Co. v. Missel,* 316 U.S. 572, 583–84, 62 S.Ct. 1216, 1222–23, 86 L.Ed. 1682, 1690–91 (1942)).

A Defendant must present evidence of an intention to ascertain what the Act requires and of its acting in accordance with the Act, but, even if it does so the district court retains sound discretion to award liquidated damages. *Pearce v. Wichita County, Texas,* 590 F.2d 128, 134 (5th Cir. 1979).

■ Plaintiffs point out that the value of one mid–1990 dollar is worth at least 16.1% less than one 1986 dollar, according to the Dept. of Labor.[7] Defendant does not dispute this but responds by asserting this economic fact is "wholly irrelevant to an award of damages in this case." However, loss of buying power is relevant to the remedial purposes of the FLSA—to place a wronged employee in the position he or she would have been if the wrongful acts complained of had not occurred. *See Peters v. City of Shreveport,* 818 F.2d 1148, 1168–69 n. 14 (5th Cir.1987), *cert. dismissed,* 485 U.S. 930, 108 S.Ct. 1101, 99 L.Ed.2d 264 (1988) (one purpose of a damages action under § 216 is to make employees whole again); *Donovan v. Sovereign Sec., Ltd.,* 726 F.2d 55, 58 (2d Cir.1984) (the purpose of restitution under the FLSA is "to make whole employees who have been unlawfully deprived of wages ..."). Further, such economic loss here is not too obscure and difficult of proof or estimate, or speculative as Defendant asserts, but is capable of being reasonably ascertained.

The Court therefore exercises its discretion and awards Plaintiffs liquidated damages in an amount equal to 20% of their actual damages.

---

7. Plaintiffs state that "[t]he value of the dollar has declined in real buying terms since April, 1986, to [January, 1990] by 16.1%." The City does not dispute this fact.

The City's liability for its violation of section 8 of the Act accrued on April 15, 1986. The acts leading to this violation occurred in June of 1985. Plaintiffs were compensated for overtime worked up to June 10, 1985, and after January

4, 1989. The decline of the value of a dollar from April, 1986, to December, 1989, is 17.5%, according to the Consumer Price Index for "all urban consumers—(CPI–U)" for "U.S. cities" and "all items," as published by the Department of Labor, Bureau of Labor Statistics, on January 18, 1990. The decline in the value of a dollar from June, 1985, to December, 1989, is 18.5%. *See id.*

884

## C. *Pre–Judgment Interest*

Plaintiffs request pre-judgment interest if the Court does not award liquidated damages. Given the Court's resolution of the liquidated damages issue, this request need not be addressed. However, the Court notes that the law in the Fifth Circuit is clear that pre-judgment interest is not available under section 216 of the FLSA. *See Peters v. City of Shreveport,* 818 F.2d 1148, 1168–69 (5th Cir.1987), *cert. dismissed,* 485 U.S. 930, 108 S.Ct. 1101, 99 L.Ed.2d 264 (1988) (pre-judgment interest not allowed under § 216 but is allowed under § 217 of FLSA).

*Cf. Ford v. Alfaro,* 785 F.2d 835, 842 (9th Cir.1986) (pre-judgment interest is allowable in the absence of an award of liquidated damages) *with Foremost Dairies, Inc. v. Ivey,* 204 F.2d 186, 190 (5th Cir.1953) ("Liquidated damages, if allowed, would act as compensation for delay in the payment of sums due under the Act. [Therefore] interest as such is not recoverable under this statute [§ 260].") (citations omitted).

## D. *Calculation of Overtime*

■ The remaining question in this action involves the proper method of calculation of the overtime wages due Plaintiffs. Specifically, the issue is whether this figure is determined by including the Plaintiffs' vacation, holiday and sick leave hours into the calculation of "hours worked," thus including these hours in any award of damages for overtime wages due. This Court has reviewed the positions of the parties, and finds that these times are not to be included as payable overtime hours unless these unscheduled hours were actually worked by a Plaintiff. *Cf. Joseph G. Moretti, Inc. v. Boogers,* 376 F.2d 27, 28

(5th Cir.1967) ("We especially point out that overtime for holidays ... [is] due only for that time in any particular week in which the employee actually worked more than forty hours").

There are three periods of time that are relevant to the issue of how the Court should calculate Plaintiffs' damages. The first period consists of all times prior to the February, 1985, *Garcia* decision. The second period starts with the *Garcia* decision in February, 1985, and ends with the City's June, 1985, change in overtime calculations. The third period starts in June of 1985 and ends in January of 1989.[8] The relevance of these periods concerns the method used by the City to calculate payable overtime hours worked during each period, if any, and the City's reasons and intentions in changing its methods.

After January, 1989, the City again changed its method of compensation for overtime hours worked, and this method is not an issue here.[9] The *amount* of compensation owing in the second period, February to June of 1985, is not at issue in this action because the City has already paid Plaintiffs for overtime wages due during this period. This was a one-time only, lump sum payment made by the City to Plaintiffs.[10]

There is no question that during the third period, from June of 1985 to January of 1989, the City had a policy of including vacation, holiday and sick leave hours into its computation of "hours worked." However, prior to the reduction of the firefighters' rates of pay in June of 1985 in response to *Garcia,* the City had no established policy of including these hours into the calculation of "hours worked" for its employees' FLSA overtime.[11]

---

**8.** This period includes the April 15, 1986, date upon which the November, 1985, amendments to the FLSA took effect.

**9.** The City subsequent to January 4, 1989, utilized compensatory time off in lieu of overtime payments, adopting a "Kelly day" so that its firefighters no longer were scheduled to work overtime.

**10.** On or about July 1, 1985, the City made this lump sum payment to each Plaintiff and to all

City employees for overtime worked from April 15 through June 10, 1985. At no time after the 1985 FLSA amendments were passed did the Defendant attempt to recoup these payments.

**11.** Since the overtime provisions of the FLSA did not apply to Plaintiffs prior to *Garcia,* the Court does not take the Plaintiffs' pleadings to assert the position that these leave hours were included in the calculation of overtime wages paid City firefighters prior to February of 1985. Further, since to 1985 amendments to the FLSA

Under the FLSA, an employer must pay overtime to its employees for hours worked over a set limit. However, the Act does not require that an employer pay overtime for vacation, holiday and sick leave time off, and such time need not be counted as "hours worked" for overtime compensation. *See* 29 C.F.R. §§ 553.20 & 778.218(a). Courts and the U.S. Dept. of Labor have long interpreted the FLSA in this manner. *See Joseph G. Moretti, Inc. v. Boogers, supra,* 376 F.2d at 28 (overtime is payable for leave time in week if the employee worked actually more than forty hours that week); *Sawyer v. Selig Mfg. Co.,* 74 F.Supp. 319, 7 Wage & Hour Cas. (BNA) 445, 447 (D.Mass.1947) (time off on vacation & sick leave not counted for overtime calculation purposes); *Dept. of Labor Opinion, Wage & Hour Division,* 94 Wage & Hour Manual 551, Opinion No. 261 (March 15, 1941) (overtime payments to employees need not include vacation, holiday or sick leave times in calculation).

■ Nevertheless, the FLSA cannot be used to justify a change in an employer's payroll practices to retroactively reduce employee compensation. *C.f.* 29 C.F.R. § 778.218(a) & (b). Although the Act does not require an employer to include leave time when calculating an employee's overtime wages, it may not be used to justify an employer's attempt to retroactively reduce wages due.

■ Plaintiffs' position is that the City cannot be allowed to "retroactively" change its method of calculating overtime hours worked in a manner that reduces their damages. They assert that these damages should be calculated by the method chosen by the City in June of 1985 and applied from June, 1985, to January, 1989. The City responds by stating that it seeks to treat its firefighters in the same manner as it treats its other employees. It does not now include non-firefighters' sick leave, holiday or vacation hours in calculating their overtime hours worked, nor has it during any relevant time in the past.

Plaintiffs respond that the City included such hours in calculating Plaintiffs' overtime compensation due during the second period, February to June of 1985, when the City calculated the lump sum payments made to Plaintiffs in July of 1985, just as it did after June of 1985 and up until January of 1989. The City does not deny this fact.

Plaintiffs therefore state that 29 C.F.R. § 778.218 applies to bar a retroactive change in the method of calculation of overtime wages, citing *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960) (exemptions in the FLSA are to be narrowly construed against employers seeking to assert them); *Dunlop v. Gray–Gato, Inc.,* 528 F.2d 792, 794 (10th Cir.1976) (express understanding between employer & employees that no overtime wages would be paid but fringe benefits received instead violates FLSA overtime requirements and such fringe benefits may not be credited against overtime pay required by the Act); *Brennan v. Heard,* 491 F.2d 1, 4 (5th Cir.1974) ("Set-offs against back pay awards deprive the employee of the 'cash in hand' contemplated by the Act, and are therefore inappropriate in any" FLSA actions for overtime wages due); *Mitchell v. Turner,* 286 F.2d 104, 105 (5th Cir.1960) ("an employee's work time under the [FLSA] is not limited solely to the time he is actively engaged in the performance of work. The test to be applied is whether the 'idle time' is 'predominately for the employer's benefit or for the employee's ...'"); 29 C.F.R.

did not take effect until April 15, 1986, Plaintiffs' entitlement to damages beings on that date and ends when their wage rates were finally restored on January 4, 1989.

The post-*Garcia* change in the method of overtime wage calculation was made by the City in order to avoid reducing the firefighters' hourly wage rates even lower than the 2.067% reduc-

tion it actually made. By including hours it normally would not include into the calculation of "hours worked," the City paid 3 extra hours of overtime. Therefore it did not have to reduce the Plaintiffs' hourly wage rates even lower in order to continue to pay each Plaintiffs the same annual wage.

§ 778.104 (each work week stands alone for overtime computation).

Plaintiffs' contention misses the point. The changes implemented by the City in June of 1985—the reduction of wages *and* the inclusion of leave time in overtime calculations—were *both* part of the City's response to *Garcia*. This response was a violation of the FLSA. While Plaintiffs correctly assert that the City is forced by the remedial nature of the FLSA to put them in the same position they would have occupied had these wrongs not occurred, Plaintiffs are not entitled to pick and choose which parts of this response they wish to keep and which the Court must discard. The remedies in the FLSA will not put them in a position better than they would have if the City had not made the wrong choice.

The City correctly asserts that its inclusion of sick leave, holiday and vacation hours in calculating the lump sum payment made to each firefighter in July of 1985, for overtime wages due between April 15th and June 10th of 1985, does not justify their inclusion in damages due Plaintiffs from June 11th of 1985 to January of 1989. Just as an employer cannot discriminate in its method of calculating overtime wages due its employees because of their assertion of coverage under the FLSA, the City is not forced to favor Plaintiffs by treating them differently from its other employees after their assertion of coverage pursuant to *Garcia*.

Plaintiffs in effect assert that the City was required to choose the correct response to a new decision overturning prior interpretations of the FLSA upon pain of judicial estoppel if it chose poorly. Equity does not work in this manner, and Plaintiffs do not support their assertion with citation to any authority to the contrary.

While the City made the wrong decision, this Court has put Plaintiffs in the position they would have occupied but for this wrong. The FLSA does not require it to do more than this under the facts of this case.

This conclusion is not inconsistent with Judge Maloney's unpublished decision concerning calculation of FLSA overtime hours in *Hill v. City of Greenville*, 696 F.Supp. 1123 (N.D.Tex.1988),[12] wherein he found it significant that the City of Greenville treated its firefighters no differently in calculating the hours to be included in their overtime wages than it treated its other employees. Here too the City of Wichita Falls should not be expected to compensate its firefighters any differently now than it treated them prior to *Garcia*, except to properly pay them overtime, or to treat them better than its other employees before or after *Garcia*. Nor would it further the purposes of the FLSA for the City to be judicially estopped as a result of a decision—made prior to the November, 1985, amendments to the FLSA—to treat them differently for purposes of a one-time payment of overtime wages due as a result of *Garcia*.

## CONCLUSION

The Court has found that there is no material issue of fact concerning whether the City of Wichita Falls impermissibly discriminated against the Plaintiffs after a sufficient assertion of FLSA coverage was made. The Court has found that the Defendant has in effect admitted it illegally reduced Plaintiffs' wages in violation of section 8 of the 1985 FLSA amendments. The Court further finds that there is no material issue of fact concerning whether liquidated damages are appropriate in this action or the proper method of calculating the amount of damages owed Plaintiffs.

---

12. In *Hill*, Judge Maloney included the firefighters' sick, vacation and holiday leave time as "hours worked" for purposes of computing FLSA overtime because the City of Greenville had informed its firefighters that it would continue to count such times when it reduced their hourly rates of pay. In that action such hours were counted for all city employees both before and after the reduction in wages, whereas here such hours were not counted before the reduction for any city employee nor after the reduction for any city employees other than Plaintiffs.

Plaintiffs' Motion for Summary Judgment is granted insofar as Plaintiffs seek judgment against the Defendant for liquidated damages under the Fair Labor Standards Act.

Liquidated damages are assessed and will be awarded at a rate equal to 20% of Plaintiff's actual damages.

Defendant's Motion for Summary Judgment is GRANTED insofar as it seeks judgment that the calculation of Plaintiffs' actual damages does not include vacation, holiday and sick leave hours as compensable hours unless these unscheduled hours were actually worked by a Plaintiff.

The parties are directed to confer and file on or before September 21, 1990, their agreement, if any, on the issue of reasonable attorney's fees in this action. If no agreement is reached by this date, the parties are to file by September 28, 1990, their affidavits, contemporaneous time records and any and all other evidence they wish to submit on this issue. Counsel in this regard are expected to comply with the requirements set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). *See also* Cochran, *Attorney Fee Awards in the Fifth Circuit*, 15 Texas Tech L.Rev. 1 (1984) (discussing § 1988 fee award criteria).

Judgment will be entered in accordance with this opinion.

It is SO ORDERED.